UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

QUINCEE BERTHELOT                              CIVIL ACTION

VERSUS                                         NO. 22-793

UNION   CARBIDE   CORPORATION,                 SECTION: "J"(5)
ET AL.

## ORDER & REASONS

Before the Court is a *Motion to Dismiss Under Rule 12(b)(6)* **(Rec. Doc. 16)** filed by Defendants, Dow Chemical Company ("Dow") and Union Carbide Corporation ("Union Carbide"; collectively, with Dow, "Defendants"); an opposition (Rec. Doc. 18) filed by Plaintiff, Quincee Berthelot ("Plaintiff"); and a subsequent reply (Rec. Doc. 21). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendants' *Motion to Dismiss Under Rule 12(b)(6)* **(Rec. Doc. 16)** should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of alleged exposure to ethylene oxide ("EtO") near a petrochemical plant located near Hanhville, Louisiana ("the facility"), operated by Union Carbide and Dow. Plaintiff is a sixty-four-year-old woman, who resides near the facility and allegedly contracted breast cancer after years of exposure to EtO emitted by the facility. EtO is a colorless, odorless toxic emission that is a well-known carcinogen.

Originally, this suit consisted of seven plaintiffs ("Original Plaintiffs") who are Louisiana residents who live within seven miles of the facility. The Original Plaintiffs

either contracted cancer themselves, or had a spouse die from cancer, allegedly because of unknowing exposure to dangerous levels of EtO emitted by the facility. On April 26, 2021, the Original Plaintiffs filed suit in the Civil District Court for the Parish of St. Charles, alleging that inhalation of EtO emitted from the facility was a substantial factor in causing plaintiffs' cancer, or their spouses' cancer. On June 2, 2021, Defendants removed the case to federal court, and it was allotted to Judge Sarah Vance.

On March 28, 2022, Judge Vance severed plaintiff's claims, and Plaintiff, Quincee Berthelot, was allotted to this section. (Rec. Doc. 1). On April 7, 2022, Plaintiff filed her first amended complaint ("First Amended Complaint"), alleging claims for negligence, civil battery, and vicinage. (Rec. Doc. 3).

On April 21, 2022, Defendants moved to dismiss Plaintiff's claims under Rule 12(b)(6). On June 2, 2022, relying on the nearly identical *Ellis v. Evonik Corp., et al.* case, *see* 2022 U.S. Dist. LEXIS 95318 (E.D. La. May 27, 2022), this Court found that Plaintiff had not stated a claim for negligence under Louisiana law, because she failed to allege a specific standard of care with which Defendants ought to have complied. (Rec. Doc. 12). This Court granted in part Defendants' motion to dismiss without prejudice and granted Plaintiff leave to amend her negligence allegations to articulate a specific duty or standard of care that Defendants are alleged to have breached. *Id.*

Plaintiff subsequently filed a second amended complaint ("Second Amended Complaint") (Rec. Doc. 15) pursuant to this Court's Order & Reasons (Rec. Doc. 12), and Defendants filed the instant motion to dismiss (Rec. Doc. 16).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

The two main questions before the Court are 1) whether Plaintiff's amended allegations articulate a specific standard of care and 2) whether Plaintiff provides sufficient facts to allege breach.

## I.    Duty

Plaintiff alleges that Defendants are liable for negligence, and the parties dispute whether Plaintiff has adequately alleged a duty owed by Defendants. Under article 2315 of the Louisiana Civil Code, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). Louisiana courts conduct a duty-risk analysis to determine whether to impose liability under article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632-33 (La. 2006). Liability requires satisfaction of five elements: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id.* at 633.

In this case, Plaintiff's original complaint cited no cognizable source or articulation of the duty alleged. Plaintiff instead rested on the notion that Defendants had a broad duty to exercise "ordinary care," to "avoid an unreasonable risk of harm to persons located in the surrounding areas," and to "reduce emissions to a level that do[es] not pose an unreasonable risk of harm." (Rec. Doc. 3, at 12). But Plaintiff went no further. She failed to specify a "specific standard" of care with which Defendants should have complied. *See Lemann*, 923 So. 2d at 633. Thus, this Court dismissed the negligence claims without prejudice granting Plaintiff leave to amend their complaint to allege a specific duty.

In amending her First Amended Complaint, Plaintiff forewent the generalized pronouncements that Defendants had a duty to exercise "ordinary care" to not emit "excessive emissions" that posed an "unreasonable risk." Rather, the Second Amended Complaint now alleges that Defendants have a duty to conform to the standard of care set forth in the Environmental Protection Agency ("EPA") approved state operating permit program, which is administered by the Louisiana Department of Environmental Quality ("LDEQ"), and is set forth in the Louisiana Administrative Code Title 33, Part III. Specifically, the Second Amended Complaint alleges:

> Pursuant to the Code, the Defendants have a duty to control the overall emissions of EtO into the atmosphere through installing and diligently maintaining emissions control systems and equipment at 'point sources' where emissions are planned to occur and through a LDAR program to control unplanned fugitive emissions. Emission controls were to be installed and diligently maintained for the purpose of protecting public health, safety, and welfare regardless of whether the emissions are within permit limits and regulatory ambient air quality standards.

(Rec. Doc. 15, at 11 (citing 33 La. Admin. Code Pt. III, § 905,[1] § 2121[2])).

Defendants argue that "[f]or a negligence claim alleging unsafe emissions . . . the plaintiff must tether her claim to a 'particular emissions threshold' that has been exceeded." (Rec. Doc. 16-1, at 7) (citing *Ellis*, 2022 U.S. Dist. LEXIS 95318, at *28 (citations omitted)). Defendants contend that Plaintiff's citations to 33 La. Admin. Code Pt. III, § 905 and § 2121 do not set a "specific standard of care" under *Butler v.*

---

[1] L.A.C. 33:III.905(a) provides, "Except as provided in Subsection B of this Section, to aid in controlling the overall levels of air contaminants into the atmosphere, air pollution control facilities should be installed whenever practically, economically, and technologically feasible. When facilities have been installed on a property, they shall be used and diligently maintained in proper working order whenever any emissions are being made which can be controlled by the facilities, even though the ambient air quality standards in affected areas are not exceeded."

[2] L.A.C. 33:III.2121 sets forth extensive, precise requirements to control fugitive emissions.

*Denka Performance, LLC*, because the regulations only contain general requirements that do not establish an emissions threshold. *Id.* at 6 (citing 16 F.4th 427 (5th Cir. 2022)).

However, Defendants misrepresent what is required to articulate a duty. Defendants purport a hard and fast rule that Plaintiff *must always* state a particular emissions threshold, but this is not what the *Butler* Court meant by a specific standard. In *Butler*, the plaintiffs alleged that the defendants had a duty to not produce excessive emissions and stay within an acceptable risk threshold. 16 F.4th at 445. As to whether plaintiff had adequately alleged a duty under Louisiana law, the *Butler* Court explained:

> [Plaintiff] says Denka's chloroprene emissions – untethered from any particular emissions threshold – are nonetheless unreasonably excessive . . . Butler's retreat to generalized grievances is unavailing . . . Here, Butler relies not on the EPA, OSHA, or other agencies' recommended emissions thresholds but on generalized pronouncements that Denka has violated its duty to take 'reasonable care.' . . . Butler points to no . . . source of law . . . in which such generalized references to 'excessive emissions,' 'acceptable risk threshold,' and 'unreasonable dangerous emissions,' constitutes a sufficient legal duty.

*Id.* Hence, the *Butler* Court held that a generalized pronouncement that emissions were excessive is not specific enough, because under those facts, there is no standard with which to evaluate the Defendant's conduct. *See id. Butler* does not require a numerically specific emissions threshold in every case though, because there are different standards for different types of conduct. In fact, one of Plaintiff's cited regulations, 33 La. Admin. Code Pt. III § 905, explicitly states that a defendant may be found liable, "even though the ambient air quality standards in the affected areas are not exceeded."

Thus, it is sufficient that Plaintiff alleges the legal standards expressed in 33 La. Admin. Code Pt. III, § 905 and § 2121 and applies the facts to the standards to render her expression of the law case-specific.[3] This is a far-cry from the *Butler* plaintiff's allegations and the allegations in the First Amended Complaint that generally alluded to "unreasonably excessive emissions." Thus, the Court finds Defendants' arguments are not persuasive, because Plaintiff articulates the legal duties to control emissions expressed in sections of Louisiana Administrative Code Title 33, Part III, which Defendants must adhere to in operating the facility.

Moreover, in the recent state court decision, *Spencer v. Valero Refining Meraux, LLC*, the appellate court affirmed the district court's finding that the defendant refinery "had a duty to control the overall levels of air contaminants entering the surrounding area by conforming its conduct to a specific standard of care under LAC 33.III.905(A)." No. 21-3838, (La. App. 4 Cir. 2/2/22); 2022 La. App. LEXIS 157, at *7-8. Recently, two other similar cases in this Court cited *Spencer* and found that refineries and like facilities are held to a specific standard of care pursuant to the Louisiana Administrative Code Title 33, Part III. *Lebouef v. Evonik Corp.*, 2022 U.S. Dist. 140236, at *19-20 (E.D. La. Aug. 8, 2022); *Foster v. Evonik Corp.*, 2022 U.S. Dist. LEXIS 141206, at *21 (E.D. La. Aug. 9, 2022).

---

[3] Plaintiff alleges, "[p]ursuant to the Code, the Defendants have a duty to control the overall emissions of EtO into the atmosphere through installing and diligently maintaining emissions control systems and equipment at 'point sources' where emissions are planned to occur and through a LDAR program to control unplanned fugitive emissions. Emission controls were to be installed and diligently maintained for the purpose of protecting public health, safety, and welfare regardless of whether the emissions are within permit limits and regulatory ambient air quality standards." (Rec. Doc. 15, at 11).

Defendants also argue that *Spencer* is distinguishable because the case involved an explosion, while the present matter does not. (Rec. Doc. 16, at 2). However, this is a factual issue that has no bearing on whether a duty exists. *Lebouef*, 2022 U.S. Dist. 140236, at *18-19 (citing *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 539 (5th Cir. 2015) ("Whether a duty exists is a question of law to be decided by the court; whether a duty is breached is a question of fact.")). Refineries and facilities like the ones run by Defendants and Valero Refining Meraux, LLC may still be held to the same standard of care even if their alleged breaches are factually distinct. Therefore, Defendants improperly grafts factual allegations of breach onto the element of duty, and so, their argument is not persuasive.

In sum, Plaintiff has successfully amended her complaint to allege a specific standard of care.

## II.    Breach

Next, Defendants argue that even if Plaintiff has alleged a specific duty of care, Plaintiff has failed to properly allege that Defendants breached that duty of care. (Rec. Doc. 16-1, at 9). Specifically, Defendants contend that Plaintiff does not identify any comments, findings, or information that support her conclusion that Defendants violated or otherwise failed to comply with the cited regulations. (*Id.* at 16). Plaintiff's failure to include any facts that support her inferences that Defendants were using faulty equipment or failing to comply with a leak detection program, Defendants assert, renders her Second Amended Complaint insufficient. (*Id.* at 17). In reply,

8

Plaintiff argues that she provided a sufficient factual basis to support her allegations of breach. (Rec. Doc. 18, at 4).

The Second Amended Complaint alleges that "Defendants have operated the facility without sufficient emissions and leak controls to reasonably limit and/or eliminate the toxic EtO" (Rec. Doc. 15, at 7). Plaintiff claims that "fugitive releases are caused by undetected and unrepaired leaks, faulty equipment, and other negligence." (*Id.*). Moreover, Plaintiff alleges that at a community outreach meeting regarding the facility's EtO emissions organized by the EPA with LDEQ,

> the EPA explained that, based on the cancer risk the facility's EtO emissions cause to the communities around it, the EPA considers the facility's emission levels to "not be sufficiently protective of human health" despite a reported reduction in emissions from 2014 to 2020. Even though the EPA advised that Evonik has decreased its EtO emissions from 2014 to 2020 by nearly 50%, the levels emitted were still not "sufficiently protective of human health" according to EPA guidelines and standards even though within permitted limits

(*Id.* at 9). Plaintiff further alleges:

> Defendants failed to act reasonably and diligently in implementing systems and equipment to control planned EtO emissions from known source points (the gas line that needed a new scrubber and the railcar operations that were unnecessarily venting to the flare). Further, given the consistently large volumes of fugitive EtO emissions from leaks and faulty equipment, which emissions were not addressed at all by Defendants or the EPA at the community meeting, the Defendants have not conformed their conduct to the required standards of care to protect the public health of the Plaintiff and other residents who have lived and still live near the facility.

(*Id.* at 11-12). Taken together, the Court finds that the above allegations in Plaintiff's Second Amended Complaint are sufficient to state a claim to relief that is plausible on its face.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss **(Rec. Doc.**
**16)** is **DENIED**.

New Orleans, Louisiana, this 11th day of August, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE